J-S05025-20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DOUGLAS LEE MINER | : | |
| | : | |
| Appellant | : | No. 559 MDA 2019 |

Appeal from the PCRA Order Entered June 22, 2018,
in the Court of Common Pleas of York County,
Criminal Division at No(s): CP-67-CR-0007251-2009.

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DOUGLAS LEE MINER | : | |
| | : | |
| Appellant | : | No. 560 MDA 2019 |

Appeal from the PCRA Order Entered June 22, 2018,
in the Court of Common Pleas of York County,
Criminal Division at No(s): CP-67-CR-0003215-2010.

BEFORE:  SHOGAN, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY KUNSELMAN, J.:                **FILED AUGUST 24, 2020**

Douglas Lee Miner appeals from the order denying his petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").[1] Additionally, Miner's court-appointed PCRA counsel has filed a motion to withdraw from

---

[1] *See* 42 Pa.C.S.A. §§ 9541-9546.

J-S05025-20

representation, as well as a "no-merit" brief pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*) ("**Turner**/**Finley** Brief").[2]   We grant counsel's motion and affirm the PCRA court's order in part.

This appeal involves multiple convictions at two different dockets.  The trial court summarized the facts pertinent to each docket as follows:

> The general facts of the case, according to testimony taken at trial, are as follows.  John Brensinger, the victim in [Case No.] 7251-2009, was living in the same apartment building as [Miner] in September 2009.  Mr. Brensinger made plans to go to his parents' home for the evening; [Miner] was the only person whom Mr. Brensinger told he would be out of town for the evening.  David Brensinger, John's father, arrived to pick John up and also casually mentioned to [Miner] that John would be back the next day.  When John returned to his apartment the next day, he realized several things were missing, including a leather jacket and a small amplifier that he had borrowed from a friend.  He estimated the total value of the items stolen to be between $500 and $1,000.  The amp was recovered from a music store and ultimately traced to [Patty] Lane, the victim in [Case No.] 3215-2010. The other items were recovered from Patty's residence and identified by John as the items taken from his apartment.

---

[2] PCRA counsel submitted his **Turner**/**Finley** letter as a brief similar to the requirements of **Anders v. California**, 386 U.S.  738 (1967).  Compliance with **Anders** applies to counsel who seeks to withdraw from representation on direct appeal.  **Anders** imposes stricter requirements than those imposed when counsel seeks to withdraw during the post-conviction process pursuant to the dictates of **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).  **See Commonwealth v. Fusselman**, 866 A.2d 1109, 1111 n.3 (Pa. Super. 2004). Thus, we will assess counsel's assertion that the issues Appellant wished to raise have no merit under a **Turner**/**Finley** analysis.

Patty Lane met [Miner] in the beginning of September 2009 and met up with him about a week later for drinks. [Miner] called her several times afterwards and when she finally, albeit reluctantly, spoke to him, [Miner] asked her to store some of his things at her house; she agreed to do so for a week or two. When [Miner] arrived, he brought his stuff and asked to use the bathroom; Patty felt uncomfortable and called her neighbor, Carrie Overton, to tell her [Miner] was there. [Miner] came out of the bathroom and proceeded to drink a beer while talking to Patty; he then went back in the bathroom. When he exited the bathroom a second time, he told Patty to take her clothes off. Patty eventually took off her shirt and bra, trying to "sweet talk" [Miner] into stopping. [Miner] continued, however, by pushing Patty on the couch, climbing on top of her, and pulling off her pants and underwear. [Miner] then proceeded to hold Patty down by her throat and forcibly have both vaginal and oral sex with her, which she described as painful. At one point her neighbors knocked on the door but [Miner] covered her mouth and told her to shut up or he would kill her. Eventually Patty got her hands around [Miner's] neck and managed to push him off of her; she ran next door for help, still naked. Kevin Gephart, Patty's neighbor and Carrie Overton's boyfriend, went over to her house and directed [Miner] to get out.

Susan McDonald, a Forensic Nurse Examiner at York Hospital conducted an examination of Patty after the incident and took vaginal and neck swab samples for DNA testing. Some saliva was detected in the neck swab and some sperm was detected in the vaginal sample. While a partial Y DNA profile obtained from the vaginal swab excluded [Miner] as a contributor, the neck swab did indicate the presence of DNA from both Patty and [Miner]. Ms. McDonald also testified regarding [Patty's] visible injuries.

***Commonwealth v. Miner***, 64 A.3d 273 (Pa. Super. 2013), unpublished

memorandum at 1 (citing Trial Court Opinion, 5/18/12, at unnumbered 3-4

(citations omitted)).

Based on this evidence, at Case No. 7251-2009, the jury found Miner guilty of burglary, theft by unlawful taking, and receiving stolen property.[3] At Case No. 3125-2010, the jury convicted Miner of two counts of rape, and multiple, related charges. On November 28, 2011, the trial court sentenced Miner at both dockets to an aggregate term of eight to sixteen years of imprisonment. Following the denial of a post-sentence motion, Miner filed a timely appeal to this Court. In an unpublished memorandum filed on January 10, 2013, we rejected Miner's claims and affirmed his judgment of sentence. *Miner*, *supra*.

Miner filed a *pro se* PCRA petition on May 2, 2013. The PCRA court appointed counsel, and PCRA counsel filed an amended petition on April 13, 2017. The PCRA court held an evidentiary hearing on April 24, 2017, and the court denied Miner's PCRA petition by order entered June 19, 2018.[4] Although Miner sought appellate review of this decision, his then-appellate attorney

---

[3] On November 9, 2010, the trial court granted Miner's request for a mistrial in the Commonwealth's first attempt to prosecute him at this docket.

[4] The PCRA court explained the over five-year delay in disposing of Miner's PCRA petition as follows: "We would note that [Miner] is a prolific filer of voluminous materials and supplemental PCRA petitions, which necessarily take longer to review. We do not question [Miner's] zeal and desire to overturn what he views as an injustice; rather, we note that his case progressed as quickly as his filing and our own docket would allow. Moreover, owing to changes in counsel [Miner's] petition was, regrettably, further delayed." PCRA Court Opinion, 8/16/19, at 2 n.1. Our review of the record supports this statement. Indeed, the number of issues addressed by PCRA counsel in his **Turner/Finley** Brief is indicative of Miner's *pro se* filings.

failed to prosecute the appeal. On August 30, 2018, however, the PCRA court reinstated Miner's appeal rights *nunc pro tunc*, and appointed counsel. Although Miner continued to contact counsel and the court regarding his desire to do so, a direct appeal was not pursued. On March 15, 2019, the PCRA court appointed current counsel ("PCRA counsel"), and once again reinstated Miner's PCRA appellate rights *nunc pro tunc*. This timely appeal followed.[5]

As noted above, PCRA counsel determined that the issues Miner wished to raise on appeal lacked merit, and accordingly filed a petition to withdraw from representation and the **Turner**/**Finley** Brief.

In the **Turner**/**Finley** Brief, PCRA counsel raises thirteen issues upon which Miner sought post-conviction relief. These issues involve the alleged ineffectiveness of trial counsel, the alleged ineffectiveness of appellate counsel, and two claims of prosecutorial misconduct. Prior to addressing any of these claims, however, we must address current counsel's petition to withdraw.

In order to withdraw under **Turner**/**Finley** in this Court:

---

[5] Although Miner included both trial court docket numbers on his separate notices of appeal, this fact no longer requires quashal. **See Commonwealth v. Johnson**, ___ A.3d ___, ___ (Pa. Super. 2020)(*en banc*) (filed July 9, 2020), Slip Opinion at 12 (partially overruling **Commonwealth v. Creese**, 216 A.3d 1142 (Pa. Super. 2019), to the extent that **Creese** interpreted **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), as requiring Superior Court to quash appeals when appellant filed multiple notices of appeal and each notice lists all of the appealed from docket numbers). **See also Commonwealth v. Larkin**, ___ A.3d ___, ___ (Pa. Super. 2020) (*en banc*) (filed July 9, 2020), Slip Opinion at 3 (accord).

>     (1)    PCRA counsel must file a no-merit letter that details the nature and extent of counsel's review of the record; lists the appellate issues; and explains why the issues are meritless.
>
>     (2)    PCRA counsel must file an application to withdraw; serve the PCRA petitioner with the application and the no-merit letter; and advise the petitioner that if the Court grants the motion to withdraw, the petitioner can proceed *pro se* or hire his own lawyer.
>
>     (3)    This Court must independently review the record and agree that the appeal is meritless.

*See Commonwealth v. Widgins*, 29 A.3d 816, 817-18 (Pa. Super. 2011) (citing *Commonwealth v. Pitts*, 981 A.2d 875, 876 n.1 (Pa. 2009); *Turner*, 544 A.2d at 928; *Finley*, 550 A.2d at 215.

Here, in the *Turner/Finley* Brief and accompanying letter to Miner, PCRA counsel described the extent of his review, identified the issues that Miner sought to raise, and explained why the issues lacked merit. In addition, PCRA counsel provided Miner with a notice of his intention to seek permission to withdraw from representation, a copy of the *Turner/Finley* Brief, and advised Miner of his rights in lieu of representation. Thus, we conclude that PCRA counsel has substantially complied with the requirements necessary to withdraw as counsel. *See Commonwealth v. Karanicolas*, 836 A.2d 940, 947 (Pa. Super. 2003) (holding that substantial compliance with requirements to withdraw as counsel will satisfy the *Turner*/*Finley* criteria). We now independently review Miner's claims to ascertain whether they entitle him to relief.

In reviewing the denial of a PCRA Petition, we examine whether the PCRA court's determination "is supported by the record and free of legal error." **Commonwealth v. Rainey**, 928 A.2d 215, 223 (Pa. 2007) (citations omitted).

Additionally, when a petitioner alleges counsel's ineffectiveness in a PCRA petition, he must prove by a preponderance of the evidence that his conviction or sentence resulted from ineffective assistance of counsel "which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii). The petitioner must demonstrate:

> (1) that the underlying claim has arguable merit; (2) that no reasonable basis existed for counsel's actions or failure to act; and (3) that the petitioner suffered prejudice as a result of counsel's error. To prove that counsel's chosen strategy lacked a reasonable basis, a petitioner must prove that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. Regarding the prejudice prong, a petitioner must demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction. Counsel is presumed to be effective; accordingly, to succeed on a claim of ineffectiveness[,] the petitioner must advance sufficient evidence to overcome this presumption.

**Commonwealth v. Johnson**, 139 A.3d 1257, 1272 (Pa. 2016) (internal citations and quotation marks omitted). A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. **Commonwealth v. Martin**, 5 A.3d 177, 183 (Pa. 2010).

Miner's first five issues involve the alleged ineffectiveness of trial counsel. We address each issue separately.

In his first issue, Miner argues that trial counsel was ineffective for failing to object to the consolidation of his two cases for trial. This issue lacks merit, as our review of the record refutes it.

The parties had a pre-trial conference before the Honorable John H. Chronister on September 15, 2010, approximately one week after the court had granted Miner's motion for mistrial in Case No. 7251-2009. At this conference, the Commonwealth moved to consolidate the cases, and Miner's trial counsel stated Miner was not objecting to consolidation. N.T., 9/15/10, at 2. Upon the court's inquiry, Miner assured Judge Chronister that he discussed the advantages and disadvantages of consolidating the cases with trial counsel, and Judge Chronister discussed these factors with Miner as well. *See id.* at 3-4. When Judge Chronister asked Miner if he was "willing to take that risk," Miner responded, "Yes." *Id.* at 5.

By the time of a pre-trial conference held on November 16, 2010, Miner's cases had been reassigned to the Honorable Michael E. Bortner. At that time, trial counsel informed Judge Bortner:

> Although originally agreeing to [consolidation], [Miner] has changed his mind and would like those cases to be tried separately.
>
> At this time, Your Honor, I would put on the record that I have advised him I think it's better for them to be tried together. He disagrees with me, and he wishes to exercise his rights to have separate trials on those two cases, Your Honor.

- 8 -

N.T., 11/16/10, at 2-3. The Commonwealth then informed Judge Bortner of when the issue of consolidation was first raised and that "it was felt by Judge Chronister that the cases were so connected that they should be tried together." *Id.* at 3. Judge Bortner then denied trial counsel's request, and noted that "Judge Chronister's order would stand that the cases be tried together." *Id.*

Given the above, it is clear that trial counsel unsuccessfully sought to sever Miner's two cases. Thus, Miner's first claim of trial counsel's ineffectiveness fails.

In his second issue, Miner claims that trial counsel was ineffective for failing to object to his retrial at Case No. 7251 based on double jeopardy principles. We cannot agree.

Because an appeal grounded in double jeopardy raises a question of constitutional law, this Court's scope of review is plenary and our standard of review is *de novo*. ***Commonwealth v. Vargas***, 947 A.2d 777, 780 (Pa. Super. 2008). If the factual findings of the trial court impact its double jeopardy ruling, we apply a deferential standard of review:

> Where issues of credibility and weight of the evidence are concerned, it is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. The weight to be accorded conflicting evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record.

*Commonwealth v. Wood*, 803 A.2d 217, 220 (Pa. Super. 2002) (citation omitted).

This Court has summarized the protections afforded by both Double Jeopardy Clauses[6] as follows:

> It is now well-settled that when a defendant requests a mistrial, the federal Double Jeopardy Clause bars retrial only when "the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial." [*Oregon v. Kennedy*, 456 U.S. 667, 679 (1982). The additional protections provided under Pennsylvania's Double Jeopardy Clause do not extend to non-intentional prosecutorial misconduct, but rather only bar retrial following a defendant's successful motion for a mistrial "when the conduct of the prosecutor [giving rise to the mistrial] is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial." [*Commonwealth v. Smith*, 615 A.2d 321, 325 (Pa. 2002)].

*Commonwealth v. Kearns*, 70 A.3d 881, 886 (Pa. Super. 2013).

Here, the PCRA court concluded that Miner's claim of ineffectiveness failed. The court found that trial counsel "warned [Miner] that there was no basis to a double jeopardy claim" and found that "there was a lack of proof of prosecutorial misconduct[.] PCRA Court Opinion, 6/19/18, at 8-9.[7] We agree.

---

[6] *See* U.S.C.A. Const. Amendment. 5; Pa. Const. Art. I, Section 10.

[7] In addressing each of Miner's ineffectiveness claims, the PCRA court discussed all three prongs of the ineffectiveness test. The court did not have to since the failure to prove any one prong results in the denial of relief. *Martin*, *supra*.

- 10 -

Our review of the record reveals that, during her direct examination by the Commonwealth during Miner's first trial at Case No. 7251-2009, Ms. Lane unexpectedly referred to the police coming to her house for a reason different from their search for items taken from Mr. Brensinger's apartment. **See** N.T., 9/9/10, at 66-69. It is clear from reading the transcript, that Ms. Lane's reference to the other case pending against Miner was inadvertent, and in no way elicited by the Commonwealth. Miner's second ineffectiveness claim fails because counsel cannot be deemed ineffective for failing to pursue a meritless claim. **Commonwealth v. Loner**, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*).

In the third issue, Miner asserts that the PCRA court erred in rejecting his claim that trial counsel was ineffective for failing to consult with an expert regarding the rape kit taken from Ms. Lane.

This Court has reiterated a PCRA petitioner's burden when raising this claim:

> When raising a claim of ineffectiveness for failure to call a potential witness, a petitioner satisfies the performance and prejudice requirements of the [**Strickland v. Washington**, 466 U.S. 668 (1984)] test by establishing that: (1) the witness existed; 2) the witness was available to testify for the defense; (3) counsel know of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial[.]

**Commonwealth v. Matias**, 63 A.3d 807, 810-11 (quoting **Commonwealth v. Sneed**, 45 A.3d 1096, 1108-09 (Pa. 2012).

These same standards apply when considering whether counsel was ineffective for failing to call an expert witness. *Commonwealth v. Chmiel*, 30 A.2d 1111, 1143 (Pa. 2011). "To demonstrate *Strickland* prejudice, a petitioner must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." *Commonwealth v. Matias*, 63 A.3d 807, 811 (Pa. Super. 2013) (citation omitted). Finally, "[a] failure to call a witness is not *per se* ineffective assistance of counsel for such decision usually involves matters of trial strategy." *Id.*

Initially, we note that Miner's claim fails because he did not identify a potential expert with whom he had consulted regarding the rape kit. A PCRA petitioner claiming he received the ineffective assistance of counsel must allege sufficient facts from which a court can determine counsel's effectiveness. Pa.R.Crim.P. 902(A)(12); *see Commonwealth v. Pettus*, 424 A.2d 1332 (Pa. 1981) (stating that a defendant may not argue ineffectiveness in vacuum). Thus, because Appellant has not established the *Strickland* criteria regarding lack of an expert witness, his claim has no arguable merit, and it must fail. *Johnson*, *supra*.

Additionally, the PCRA court found no merit to Miner's claim because trial counsel, "changed his theory of the case, upon [Miner's] request, to argue that there was consensual sexual intercourse." PCRA Court Opinion, 6/19/19, at 9. The record supports this statement, and, given the change in strategy, the results of the rape kit became irrelevant. Finally, the PCRA court accepted

- 12 -

as credible trial counsel's testimony that counsel "was afraid if he consulted an expert it [might] give support to the Commonwealth's evidence and case." *Id.* This statement is supported by our review of the PCRA hearing, as trial counsel testified that he saw no need to hire an expert because the results fit into his defense, which he highlighted upon cross-examination of the Commonwealth's expert. *See* N.T., 4/24/17, at 82. Thus, for these reasons, Miner's third claim of trial counsel's ineffectiveness fails.

In his fourth issue, Miner challenges that trial counsel was ineffective for failing to impeach Ms. Lane with her prior inconsistent statements. This claim is refuted by the record. Our review of the record supports the PCRA court's conclusion that trial counsel "did strenuously cross-examine [Ms. Lane]." PCRA Court Opinion, 6/19/19 at 10. Regarding Miner's PCRA hearing testimony about certain inconsistencies in Ms. Lane's testimony between the first and second trials at Case No. 7251-2009, the PCRA court explained: "[Miner] argues that timing and names of what [Ms. Lane] testified to was crucial to be brought out [at] trial. [Trial counsel] did not need to touch on specifically every single inconsistency in order to make a point." *Id.*[8] Finally, the PCRA court noted that Miner testified at the PCRA hearing that trial counsel

---

[8] We note that trial counsel did cross-examine Lane regarding the timing of when a call was placed to 9-1-1. *See* N.T., 5/3/11, at 204-06. In addition, trial counsel did cross-examine a Commonwealth witness regarding a discrepancy in her name as listed in police reports. *See id.* at 253.

was too aggressive in cross-examining Ms. Lane and "hurt his image with the jury." *Id.* We agree with the PCRA court that Miner "cannot argue it both ways." *Id.* Thus, Miner's fourth ineffectiveness claim fails.

In his fifth and final claim of trial counsel's ineffectiveness, Miner claims that counsel was ineffective for failing to poll the jury. However, at the PCRA hearing, prior PCRA counsel conceded that, based on case law, this claim lacked arguable merit. We agree.

As our Supreme Court has stated:

> An accused has an absolute right to poll the jury to ensure that each juror voluntarily has joined in the verdict as written and announced. *Commonwealth v. Martin*, 379 Pa. 587, 109 A.2d 325 (1954). Failure to do so, however, does not constitute ineffectiveness of counsel in the absence of other factors. Here, the verdict slip contained the signatures of all twelve jurors. Appellant has demonstrated no error and, indeed, no prejudice.

*Commonwealth v. Williams*, 640 A.2d 1251, 1266 (Pa. Super 1994).

Here, as in *Williams*, Miner's verdict slip was signed by all twelve jurors. Thus, Miner cannot establish prejudice, and his fifth ineffectiveness claim fails.

In sum, the PCRA court properly rejected all of Miner's claims of trial counsel's ineffectiveness and correctly concluded that none of the claims entitled him to post-conviction relief.

In his next six issues, Miner claims that the PCRA court erred in rejecting his claims that appellate counsel provided ineffective assistance.

In this case, the trial court actually appointed appellate counsel prior to sentencing. In his sixth issue, Miner wished to raise the claim that appellate

counsel was ineffective for failing to object to him receiving separate sentences for burglary and theft. At the PCRA hearing, the parties agreed that the offenses should have merged for sentencing purposes. Prior PCRA counsel conceded that Miner could not prove prejudice because he received a concurrent sentence on this theft charge. Nonetheless, Miner's merger claim is a non-waivable challenge to the legality of sentence. ***Commonwealth v. Petersen***, 49 A.3d 903, 911 (Pa. Super. 2012). Miner's theft conviction should have merged with his burglary sentence. ***See generally***, 42 Pa.C.S.A. § 9765. As such, we grant Miner post-conviction relief and vacate the concurrent sentence of six to twelve months he received for his theft conviction. ***See*** N.T., 11/28/11, at 4.

In his seventh issue, Miner asserts that appellate counsel should have raised claims of trial counsel's ineffectiveness as part of his direct appeal. At the PCRA hearing, prior counsel conceded that this claim had no merit because, in general, ineffectiveness claims must await collateral review. ***See*** N.T., 4/24/17, at 64. We agree. Claims of ineffective assistance of counsel are not cognizable on direct appeal except in limited circumstances not applicable to any of Miner's trial counsel ineffectiveness claims. ***See generally***, ***Commonwealth v. Delgros***, 183 A.3d 352 (Pa. 2018). Thus, Miner's seventh issue fails.

In issues eight through eleven, Miner claims that appellate counsel was ineffective in the claims he actually raised on appeal and his failure to support those claims with citations to the record. Specifically, in his eighth and ninth

issues, Miner asserts that appellate counsel was ineffective for raising a ***Brady***[9] violation regarding the wrong evidence.

Resolution of these issues requires the following summary of Miner's direct appeal. In the Rule 1925(b) statement, appellate counsel asserted that the trial court erred in allowing the Commonwealth "to introduce testimony at trial in [Case No.] 3215-2010 regarding [Ms. Lane's] underwear as pictures of such were not provided to [Miner] prior to trial." ***Miner***, unpublished memorandum at 5. In his brief to this Court, however, counsel asserted that the trial court erred "by allowing the prosecution to publish to the jury the photos depicting the injuries to [Ms. Lane] that were taken by [a nurse] as they were never provided during discovery[.]" ***Id.*** at 2. We found Miner's issue to be waived, because it was not raised in his Rule 1925(b) statement. ***Id.*** at 6.

The PCRA court found Miner's claim regarding the ***Brady*** misstep to be of arguable merit. ***Id.*** at 11.[10] The PCRA court concluded, however, that the claim failed because Miner could not establish prejudice:

---

[9] ***Brady v. Maryland***, 373 U.S. 83 (1963). A ***Brady*** claim requires a petitioner to show (1) the prosecutor has suppressed evidence; (2) the evidence, whether exculpatory or impeaching, is helpful to the defendant; and (3) the suppression prejudiced the defendant. ***Commonwealth v. Cox***, 146 A.3d 221, 229 (Pa. 2016).

[10] In his ***Turner/Finley*** Brief, PCRA counsel mistakenly refers to the photographs Miner wished to challenge based upon a ***Brady*** violation were of the crime scene. ***See Turner/Finley*** Brief at 42. At the PCRA hearing, Miner

- 16 -

> [T]here was no possibility that the outcome would have been different if [appellate counsel] filed the claim in regards to the photograph[s] as opposed to the underclothing and was able to properly cite that. While the Superior Court did not rule on the *Brady* violation [Miner wished to raise] in the direct appeal, the alleged *Brady* violation was meritless because the photograph[s'] introduction at trial did not change or affect [trial counsel's] case.

PCRA Court Opinion, 6/19/19, at 12.

Our review of the record supports the PCRA court's conclusion that Miner could not establish prejudice. At trial, trial counsel unsuccessfully objected to the introduction of the photographs because the Commonwealth did not provide them in discovery. *See* N.T., 5/3/11, at 299-300. At the PCRA hearing, trial counsel testified that this evidence was not material to the defense he presented at trial. *See* N.T., 4/24/17, at 84-85. Finally, this court did not find Miner's issue waived for lack of citation to the record, but rather because it was inappropriately raised for the first time on appeal. *See supra*. Thus, Miner's eighth and ninth issues fail.

In his tenth and eleventh issues, Miner asserts that the PCRA court erred by rejecting his claim that appellate counsel was ineffective for not raising issues regarding joinder and the Commonwealth's use of perjured testimony, even though he communicated these "errors" to counsel. *See Turner/Finley* Brief at 13. We agree with the PCRA court's conclusion that Miner cannot

---

testified that he wished to challenge on appeal the use of pictures taken by the nurse as part of her examination of Ms. Lane. *See* N.T., 4/24/17, at 48-50. The PCRA court addressed the proper *Brady* claim. *See infra*.

establish prejudice. As noted above, Miner initially agreed to the joinder of the cases and the trial court, in its discretion, refused to sever them because they were logically connected. *See supra*, at 9.

Moreover, Miner's claim that the Commonwealth used perjured testimony has no support in the certified record. In making his argument, Miner essentially asserts that, to the extent Ms. Lane's testimony at the second trial of Case No. 7251-2009 did not match her testimony from the first trial, she committed perjury. Even if this were the case, Miner cannot establish that, had this claim been raised on direct appeal, the result would have been different. Thus, Miner's tenth and eleventh claims regarding appellate counsel's ineffectiveness fail.

In his final two issues, Miner claims that the PCRA court erred when it held: 1) that the Commonwealth did not commit a *Brady* violation regarding a police report;[11] and 2) that the Commonwealth did not violate his constitutional rights when the prosecutor alleged elicited perjured testimony during his trial. *Id.* at 13.

_____

[11] At the PCRA hearing, Miner also argued that the Commonwealth violated *Brady* when it failed to turn over a victim impact statement and other documents prior to sentencing. As noted by the PCRA court, Miner could not establish a *Brady* violation because the items "were created for purposes of sentencing and not for the adjudication of guilt. PCRA Court Opinion, 6/29/19, at 14.

Initially, we must determine whether these claims are properly before us. To be eligible for post-conviction relief, a petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated errors or defects in 42 Pa.C.S.A. section 9543(a)(2), and that the issues he raises have not been previously litigated. *Commonwealth v. Carpenter*, 725 A.2d 154, 160 (Pa. 1999). An issue has been "previously litigated" if the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue, or if the issue has been raised and decided in a proceeding collaterally attacking the conviction or sentence. *Carpenter*, 725 A.2d at 160; 42 Pa.C.S.A. § 9544(a)(2), (3). If a claim has not been previously litigated, the petitioner must then prove that the issue was not waived. *Carpenter*, 725 A.2d at 160. An issue will be deemed waived under the PCRA "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal, or in a prior state post-conviction proceeding." 42 Pa.C.S.A. § 9544(b).

Miner's prosecutorial misconduct claims based on *Brady* and its use of perjured testimony at trial could have been raised on direct appeal. For this reason, these two claims are waived. *Carpenter*, *supra*.

In sum, because Miner's concurrent sentence for his theft conviction should have merged with his burglary sentence, we reverse the PCRA court's order to the extent that we vacate that judgment of sentence. All of Miner's

other claims of ineffectiveness regarding trial and appellate counsel lack merit. In addition, Miner's claims regarding an additional **Brady** violation and the use of perjury are waived or otherwise without merit. Thus, with the limited exception of part of his sentence, we agree with PCRA counsel's assessment that Miner's appeal is wholly frivolous. We therefore grant counsel's motion to withdraw and affirm in part and reverse in part the PCRA court's order denying Miner post-conviction relief.

Motion to withdraw granted. Order affirmed in part and reversed in part. Judgment of sentence for theft vacated. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/24/2020